UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| JEREMY ROBINSON | CIVIL ACTION NO. 2:19-CV-00771 |
| VERSUS | CHIEF JUDGE S. MAURICE HICKS, JR. |
| CAJUN INDUSTRIES L L C | MAGISTRATE JUDGE KAY |

**MEMORANDUM RULING**

Before the Court is Defendant Cajun Industries LLC's ("Cajun") Motion for Summary Judgment (Record Document 26) seeking to dismiss all of Plaintiff Jeremy Robinson's ("Robinson") claims of discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*. Robinson opposes Cajun's Motion. (Record Document 30). For the reasons contained herein, Defendant's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

**PROCEDURAL BACKGROUND**

On or about November 15, 2016, Robinson began his employment with Cajun as a Pipefitter, Class A (journeyman) at the Sasol job[1] in Sulphur, Louisiana. (Record Document 30-4, 30-17). Robinson was one of seven employees laid off by Cajun on January 31, 2017. (Record Document 26-1). On February 22, 2017, Robinson filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that Cajun discriminated and retaliated against him due to his disability. (Record Document 1 at 2). On March 20, 2020, the EEOC issued a Notice of Right to Sue in connection with the complaint filed by Robinson. (Record Document 1-1). On June 18, 2019, Robinson filed the instant lawsuit

---

[1] The Sasol job was a joint venture between Sasol, the owner, and Fluor and Technique Integrated ("FTI"), the "middleman" or managing party for the project directly under Sasol. Cajun was one of the subcontractors on the job. (Record Document 26-6 at 2).

alleging he was discriminated against and retaliated against on the basis of his "Major Depressive Disorder and Anxiety" in violation of the ADA. (Record Document 1 at 6). Cajun filed the instant Motion for Summary Judgment on the grounds that (1) Robinson's disability discrimination fails as a matter of law because Robinson cannot show that Cajun's reason for his termination was "false or unworthy of credence" and therefore, a pretext for disability discrimination, and (2) Robinson's retaliation claim fails as a matter of law because Robinson cannot show that the Cajun's adverse action would not have occurred 'but for' Cajun's retaliatory motive. (Record Document 26-2 at 8, 20).

## FACTUAL BACKGROUND

For the purposes of this Motion, Cajun accepts the following facts alleged by Robinson as true. (Record Document 26-1 at 1 fn. 1; Record Document 39 at 1 fn.10.) In December of 2016, Robinson sought medical attention from Spindletop MHMR for depression and anxiety (Record Document 30-4 at 87, 90). On January 6, 2017, Robinson was medically diagnosed with Major Depressive Disorder, Anxiety, and Uncomplicated Bereavement. (Record Document 1 at 3). On January 10, 2017, Robinson informed Cajun's Mechanical Superintendent David Johnson and Cajun's Head of Safety Tony Guidry ("Guidry") about his medical conditions and requested three days to see a doctor, obtain medicine and "get his thinking back straight."[2] (Record Document 30-4 at 215, 245). Robinson returned to work on January 16, 2017. (Record Document 30-4 at 113-114, 246).

---

[2] Robinson claims he requested only three days off because he could not afford more time off, but that Guidry told him to take a week off. (Record Document 30-4 at 55, 62). He further states that he worked from 7:00 am to 5:30 pm six or seven days a week. (Id. at 37). In the EEOC Questionnaire, Robinson wrote that he informed Guidry, Head of Safety, of his diagnosis on 1/10/17. (Record Document 26-5 at 41). He was marked unexcused for 10 hours on 1/11/17, 1/12/17, and 1/13/17. (Record Document, 30-15 at 3). It is unclear whether Robinson was scheduled to work on Saturday, January 14, 2017, or Sunday, January 15, 2017, but these days were not marked as unexcused. (Id.).

On January 20, 2017, following an altercation between Robinson and his immediate supervisor at the time, George Garza ("Garza"), Robinson experienced an on-site panic attack and was transferred to a different crew where he reported to a new Foreman, Brandon Caughhorn ("Caughhorn"), instead of Garza. (Record Document 30-4 at 57-59, 116).

On January 30, 2017, Robinson verbally informed Caughhorn and General Foreman James Irey ("Irey") that he would be missing work for a doctor's appointment. (Record Document 30-4 at 115-116). When he returned to work on the morning of January 31, 2017, Robinson handed Caughhorn his doctor's excuse and informed him that he had been prescribed medications for his medical condition(s). (Record Document 30-4 at 115-116). On the same day, Irey received a verbal directive from Project Superintendent Curtis Ourso to select a certain number of employees to be laid off that afternoon (Record Document 30-5 at 45, 62-63, 114). Robinson was selected and received a Separation Notice stating that he was being dismissed due to reduction in force ("RIF"). (Record Document 30-18).

## LAW AND ANALYSIS

I.     **SUMMARY JUDGMENT STANDARD**

Rule 56 of the F.R.C.P. provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a). In a summary judgment motion, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings ... [and] affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)

(internal quotations and citations omitted). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... grant summary judgment." F.R.C.P. 56(e)(3).

If the movant meets this initial burden, then the non-movant has the burden of going beyond the pleadings and designating specific facts that prove that a genuine issue of material fact exists. See Celotex, 477 U.S. at 325, 106 S. Ct. at 2554 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). A non-movant, however, cannot meet the burden of proving that a genuine issue of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little, 37 F.3d at 1075. Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). In reviewing a motion for summary judgment, the court must view "all facts and inferences in the light most favorable to the non-moving party." Rogers v. Bromac Title Servs., L.L.C., 755 F.3d 347, 350 (5th Cir. 2014). But "[s]ummary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." Id.

## II. Claims of Discrimination and Retaliation

### A. Discrimination Claim

The ADA prohibits an employer from discriminating against a "qualified individual with a disability on the basis of that disability." 42 U.S.C. § 12112(a). In a discriminatory action under the ADA, the employee may either present direct evidence that he was discriminated against because of his disability or alternatively proceed under the burden-

shifting analysis first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), a Title VII case. See E.E.O.C. v. LHC Group, Inc., 773 F.3d 688, 694 (5th Cir.2014); Neely v. PSEG Tex., Ltd. P'ship, 735 F.3d 242, 245 (5th Cir.2013). This analysis first requires Robinson to establish a *prima facie* case of discrimination. See id. If Robinson is successful, then Cajun must articulate a legitimate, nondiscriminatory reason for terminating Robinson. See id. Finally, the burden shifts back to Robinson to show that Cajun's proffered reason is pretextual. See id.

In this matter Robinson concedes that he does not have direct evidence and is proceeding under the McDonnell Douglas burden-shifting analysis. (Record Document 30-2 at 11). For the purpose of this Motion, Cajun concedes that Robinson has asserted a *prima facie* case of discrimination within the meaning of the ADA. (Record Document 39 at 1). Similarly, for the purpose of this Motion, Robinson concedes that Cajun met its burden of showing a legitimate, non-discriminatory reason for his termination, stating that he "does not dispute that, on its face, the rationale provided by Cajun for his termination satisfies its minimal obligation under this prong." (Record Document 30-2 at 37).[3] Thus, the only issue before the Court at this time as to this claim is whether Cajun's proffered reason is pretextual.

In order to show that Cajun's proffered reason for laying off Robinson is pretextual, Robinson must "produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." Burton v. Freescale Semiconductor, Inc., 798 F.3d 222, 233 (5th Cir. 2015) (quoting Laxton v. Gap Inc., 333

---

[3] Robinson further states: "Here, no one materially questions whether Cajun needed to release approximately nine (9) employees when it conducted the subject layoff on January 31, 2017." (Record Document 30-2 at 38).

F.3d 572, 578 (5th Cir.2003)). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." Id. (quoting Laxton, 333 F.3d at 579). "An explanation is false or unworthy of credence," and thus pretextual, "if it is not the real reason for the adverse employment action." Id. (quoting Laxton, 333 F.3d at 578).

      Cajun argues that Robinson was terminated when Cajun was instructed to lay off employees as part of a RIF[4] and that Robinson was one of seven employees selected for layoff because of his poor attendance during his brief period of employment. In support of this, Cajun offers attendance records of Robinson showing that he missed 125 hours of work during his brief employment with Cajun. (Record Document 26-14 at 6-7).

      In response, Robinson does not contend that Cajun did not need a RIF but argues that Cajun's proffered reason (absenteeism) for selecting Robinson to be part of the RIF was not the real reason for his being laid off. In support of this, Robinson offers the following evidence:

**1. Absences**

   Robinson testifies that he provided doctor's excuses from Spindletop MHMR to Cajun for his absences during the week of January 11, 2017, through January 15, 2017, when he requested three days off but was told to stay home for the week. (Record Document 30-4 at 85, 86; see also *supra* note 2.) Robinson further testified that he produced a doctor's note and prescription sheet to Caughhorn for his absence on January

---

[4] Cajun claims that it was instructed by its "client" to lay off employees as part of the RIF. It is unclear whether the "client" in this instance was Sasol or FIT. (Record Document 26-6 at 2, see also *supra* note 2).

30, 2017, which, again, should have been denoted as excused.[5] Robinson claims that despite requesting leave, being told to take leave, and providing documentation, these absences were deemed unexcused. (Record Document 30-4 at 22, 23). Robinson argues that Cajun's disregard of his medical documentation and misclassification of his disability-related absences as "unexcused", indicates that the absences were not the real reason for his being laid off.

### 2. Statement Made

Robinson further asserts that following an altercation with Garza on January 20, 2017, he experienced an on-site panic attack and was told by his new direct supervisor Irey, "if you have issues, mental issues and anxiety, the job isn't for you." (Record Document 30-4 at 28).[6] Robinson argues that Irey's statement regarding his disability demonstrates animus which further shows that his absences were not the real reason that he was laid off.

### 3. Criteria Used

Robinson further asserts that Cajun's failure to show clear criteria used to evaluate and select who should be laid off indicates that Cajun's proffered reasons for Robinson's lay off were pretextual. In this regard, Robinson points out that Irey stated that performance evaluations were used to determine who would be laid off, but there is no record that any such evaluations were performed. In addition, Cajun has "no record of any written

---

[5] Robinson further claims that Cajun made copies for him, but that he did not keep a copy, and that the medical records from Spindletop MHMR as well as any personal medical records and/or handwritten notes regarding his employment were lost in a flood in 2017. (Record Document 30-4 at 6, 23).

[6] Because inadmissible hearsay may not be considered at the summary judgment stage pursuant to Rule 56(e), the Court notes but does not consider the statements of Garza and Irey regarding Robinson's "depression" and "problems." (Record Document 30-4 at 96-97, Record Document 30-4 at 28).

complaints or disciplinary actions administered to" Robinson and any performance evaluation was performed at the time of separation – only after the employee was selected to be included in the layoff. (Record Document 30-13 at 8; Record Document 30-5 at 25). Robinson further claims that while purporting to rely on performance issues, Irey admits he only relied on absenteeism records and did not offer evidence that all employee records were pulled and evaluated. (Record Document 30-13 at 11, 21).

      Taking all facts and inferences in the light most favorable to the non-moving party, the Court finds that there is competent summary judgment evidence in the record for a reasonable juror to find that Cajun's reasons for choosing to lay off Robinson were pretextual. Such evidence includes: (1) Cajun's classification of the absences which were purportedly documented with doctor's excuses as unexcused, (2) Irey's statement regarding Robinson's disability, (3) Cajun's lack of documentation regarding who was chosen for the RIF, (4) the close temporal proximity of the first time Robinson informed Cajun of his disability and the layoff (three weeks), and (5) the close temporal proximity of informing his new supervisor of his medications and the layoff (the same day). It is for the trier of fact, not this Court at the summary judgment stage, to decide if the criteria employed by Cajun to select candidates for the layoff permitted the decisionmakers to consider Robinson's depression and anxiety as factors. The aforementioned facts raise genuine disputes of material facts as to whether Robinson's disability was a motivating factor in his lay off. Accordingly, the Motion for Summary Judgment on Robinson's ADA discrimination claim is **DENIED**.

**B. Retaliation Claim**

The ADA prohibits an employer from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). As with his discrimination claims, Robinson does not present direct evidence of unlawful retaliation under the ADA and the burden-shifting scheme established in McDonnell Douglas is applicable. See McDonnell Douglas, *supra*, Nall v. BNSF Ry. Co., 917 F.3d 335, 349 (5th Cir. 2019); see also Feist v. La., Dep't of Justice, Office of the Attorney Gen., 730 F.3d 450, 454 (5th Cir. 2013) (citing to both Title VII and ADA cases when discussing a claim of discrimination or retaliation under the ADA).

To establish a *prima facie* case of retaliation under the ADA or Title VII, a plaintiff must show that (1) he participated in an activity protected under the statute; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action. Feist, 730 F.3d at 454. "A plaintiff alleging retaliation may satisfy the causal connection element by showing '[c]lose timing between an employee's protected activity and an adverse action against him." Id. (quoting McCoy v. City of Shreveport, 492 F.3d 551, 562 (5th Cir. 2007)). More specifically, "Title VII retaliation claims must be proved according to traditional principles of but-for causation, which requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Chavez v. City of San Antonio, 657 F. App'x 246, 248 (5th Cir. 2016) (internal quotations omitted) (Summary

judgment was appropriate because the employer showed that the "most important reason" for termination was the plaintiff's anger and abuse to other employees).

In his Complaint, Robinson alleges that since he filed an EEOC Charge in February 2017, Cajun engaged in active efforts to preclude him from securing employment at the Sasol facility and prohibited him from obtaining subsequent employment in the industry. Cajun moves for summary judgment on this retaliation claim because Robinson did not engage in protected activity until after he was terminated and thus, there is no causal connection between the protected activity and the adverse action. Robinson concedes that he does not seek to proceed with a retaliation claim stemming from Cajun's post-termination conduct[7] and does not address these contentions. Accordingly, Cajun's Motion for Summary Judgment is **GRANTED** as to the retaliation claims stemming from Cajun's post-termination conduct and these claims are **DISMISSED WITH PREJUDICE.**

In his Complaint, Robinson also alleges that after he complained of "ongoing discrimination to upper management," he was subjected to adverse employment action in the form of termination. Cajun moves for summary judgment on this retaliation claim on the grounds that Plaintiff cannot show retaliation for voicing complaints of disability discrimination during his employment. Thus, Cajun asserts that Plaintiff cannot show and did not identify any protected activity much less a causal connection between protected activity and his layoff.

In response, Plaintiff does not address or offer evidence as to what he meant by complaining of ongoing discrimination to upper management. Instead, Robinson argues

---

[7] Instead, Cajun maintains that Robinson's repeated, futile efforts to obtain subsequent employment in the industry following his discharge from Cajun must be considered when ascertaining back pay relevant to his termination-based discrimination and retaliation claims.

that his request for three days off in order to get a better handle on his depression and anxiety was "protected activity." He further claims that he suffered retaliation because in response to his request for time off, Cajun required him to take off approximately one week of work, marked the absences as "unexcused," and used those absences as one of the purported reasons for selecting Robinson for layoff. Robinson further asserts that the close temporal proximity between the requested time off on January 10, 2017, and the layoff on January 31, 2017, only three weeks after the protected activity, is further evidence of retaliation. Robinson argues that his request for time off is a request for a reasonable accommodation under the ADA and constitutes engaging in a "protected activity."

While Plaintiff mentioned being forced to take time off in the factual allegations of his Complaint, the allegations regarding these facts relate to the disability discrimination cause of action in his Complaint. (Record Document 1 at 3, 6). The Complaint does have an omnibus paragraph incorporating each paragraph in each cause of action, but Robinson never specifically alleges that the request for three days off was "protected activity" for which he was retaliated against by being laid off. Thus, it is unclear if Plaintiff intended to pursue a retaliation claim based on these facts or if he is seeking to improperly expand the pleadings with this argument. However, for the reasons explained below, the Court finds that if Robinson intended to plead a retaliation claim based on his request for three days off, he failed to establish a causal connection between the request and his layoff.

Robinson admits that he was not "forced" to take a week off as originally pled in his Complaint. Instead, he claims that he asked for only three days off (because he could not afford more time off) and that Guidry told him to take a week off. (Record Document 30-4 at 55, 62). It is undisputed that Cajun gave Robinson at least three days off as requested.

Despite Robinson's argument that he was told to take a week off, the records only indicate that he was marked unexcused for three days or 30 hours from January 10, 2017 – January 15, 2017.[8] He was not marked as unexcused for a full week of work. In addition, even if those 30 unexcused hours are not considered, Robinson's absentee records would still have him missing 95 unexcused hours of work[9] which is the worst attendance record of any of the laid off employees. (Record Document 26-1 at 50). Based on these facts and circumstances, the Court finds that even considering that Robinson's Complaint alleges a retaliation claim and considering asking for three days as "protected activity," Robinson has failed to show a causal connection between his request and his layoff.

Accordingly, since Robinson has failed to offer any offer evidence of "complaining of ongoing discrimination to upper management", Cajun's Motion for Summary Judgment is **GRANTED** as to any retaliation claims based on these allegations and these claims are **DISMISSED WITH PREJUDICE**. In addition, since Robinson has failed to show a causal connection between his asking for three days off and his layoff, Cajun's Motion for Summary Judgment is **GRANTED** as to any retaliation claims based on these allegations and these claims are **DISMISSED WITH PREJUDICE.**

## CONCLUSION

Based on the foregoing, Cajun's Motion for Summary Judgment (Record Document 26) is **GRANTED IN PART AND DENIED IN PART**. The Motion for Summary Judgment as to Robinson's discrimination claim under 42 U.S.C. § 12112(a) is **DENIED**. Robinson's ADA discrimination claim will proceed to trial. The Motion for Summary Judgment is

---

[8] See supra note 2.
[9] According to the records provided, Robinson missed 125 hours of work. If the 30 hours he took the week of January 10, 2017, were not counted as unexcused, he would have missed 95 unexcused hours of work during his employment with Cajun. (Record Document 26-14 at 6-7).

**GRANTED** as to Robinson's retaliation claims and such claims are **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 30th day of August, 2022.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT